larry edward karnes v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-223-CR

LARRY EDWARD KARNES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

The State charged Appellant Larry Karnes (“Karnes”) with robbery by threats.  The indictment included enhancement and habitual offender notices based upon two prior felony convictions.  Karnes pleaded not guilty to the charged offense and true to the enhancement and habitual offender paragraphs. A jury convicted Karnes and assessed punishment at 55 years’ confinement. In two points on appeal, Karnes contends that the trial court erred by admitting evidence of an extraneous offense for the purpose of proving identity and by admitting victim-impact evidence based on extraneous offenses during the punishment phase of trial.  We will affirm.

II. Background Facts

On August 30, 2001, Teresa Garver (“Garver”) pulled into the parking lot of a Walgreens store in Arlington, Texas.  Upon entering the lot, Garver noticed a white Ford pickup truck.  As Garver parked her vehicle, she saw the truck pull up behind her car and block her in.  A young girl exited the truck and approached Garver’s car.  The girl asked for directions and stated that she could not hear Garver’s response with the windows rolled up.  When Garver rolled her window down, Karnes approached Garver’s car and leaned on the car door, blocking Garver’s exit.  Karnes demanded that Garver give him money, to which she responded that she did not have any money.  With his hands hidden behind his back, Karnes told Garver, “Don’t make me use this.”  Garver was frightened by the threat and believed Karnes had a gun.  Moreover, the girl with Karnes told Garver that Karnes was serious and that Garver should not mess with him.  Karnes then told Garver that he did not want anybody to get hurt. At that point, a woman exited the Walgreens and walked to a car directly next to Garver’s car where her husband was parked.  Karnes then returned to his truck and moved it to allow the woman and her husband to back out of their parking space.  While Karnes was moving his truck, Garver opened her car door, pushed the girl out of her way, and ran into the Walgreens.  Once inside the store, Garver told a manager what had occurred and the manager immediately telephoned the police.

Approximately ten minutes later, less than one mile down the road, another woman, Judy Allen (“Allen”), was robbed outside of a Dillard’s by a man driving a white Ford truck.  As Allen was attempting to enter her car, she felt a tug on her purse.  After a very hard second tug, Allen was drug by her purse to the truck and pulled to the ground as the truck sped away.  As the assailant drove away with Allen’s purse, she memorized the license plate number.

Byron Stewart (“Stewart”), an Arlington Police Detective assigned to investigate Garver’s robbery, testified that the robberies of Garver and Allen were recognizably similar because of the descriptions of the perpetrators and the white truck.  Accordingly, Stewart testified that he contacted Allen to obtain the license plate number of her assailant, ran the plate number through the police computer file, and determined that the plate number was registered to Karnes.  After verifying that Karnes was the owner of the truck, Stewart testified that he developed a photo-spread containing Karnes’s picture and that of five other men with similar characteristics and showed the photo-spread to Garver.  According to Stewart, Garver was able to positively identify Karnes in “[n]o longer than five seconds.”  The police later arrested Karnes for the robbery of Garver.

III.  Extraneous Offense Identity Evidence

In his first point, Karnes contends that the trial court erred by admitting an extraneous offense for the purpose of proving identity in violation of rule 404(b) of the Texas Rules of Evidence.  Karnes claims that the Allen offense was not sufficiently similar to the charged offense to show a unique signature. Moreover, he maintains that even if the extraneous offense evidence was relevant, the probative value of the evidence was substantially outweighed by its prejudicial effect.

A.  Standard of Review for a Determination Under Rule 404(b)

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally.  
Tex. R. Evid.
 404(b); 
Nobles v. State
, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); 
Booker v. State
, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. denied) (op. on reh’g); 
Curtis v. State
, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref'd). Consequently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense.  
Tex. R. Evid.
 404(b); 
Booker
, 103 S.W.3d at 529; 
Martin v. State
, 42 S.W.3d 196, 201 n.2 (Tex. App.—Fort Worth 2001, pet. ref'd).  

An extraneous offense, however, has noncharacter-conformity relevance where it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  
Tex. R. Evid.
 401;
 Powell v. State
, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  That is, extraneous offense evidence that tends to make more or less probable an elemental or evidentiary fact or tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith.  
Montgomery v. State
, 810 S.W.2d 372, 386-87 (Tex.  Crim. App. 1991) (op. on reh'g); 
Johnson v. State
, 932 S.W.2d 296, 301 (Tex.  App.—Austin 1996, pet. ref'd).  Consequently, evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
Tex. R. Evid.
 404(b); 
Booker
, 103 S.W.3d at 529-30.  The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility.
  See Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g).

The trial court's task is to determine whether extraneous offense evidence is relevant for a purpose other than the propensity of the defendant to commit crimes or other bad acts.  
Booker
, 103 S.W.3d at 530.  Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion.  
Moreno v. State
, 858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert.
 
denied
, 510 U.S. 966 (1993); 
Corley v. State
, 987 S.W.2d 615, 618 (Tex. App.—Austin 1999, no pet.).  Moreover, appellate courts should give great discretion to the trial courts in matters of relevancy, reversing only if the trial court acts outside "the zone of reasonable disagreement."  
Montgomery
, 810 S.W.2d at 391.  A trial court's ruling on admissibility should not be disturbed simply because an appellate judge might decide a question differently than the trial judge.  
Id
.  So long as the trial court's decision to admit or exclude evidence falls in the zone within which reasonable minds may differ, appellate courts should refrain from disturbing the trial court's decision on appeal.  
Id
.; 
Osby v. State
, 939 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, pet. ref'd).

B.  404(b) Relevance Determination on the Issue of Identity 

The trial court allowed the State to introduce evidence regarding the Allen offense.  The State argues that the Allen offense was relevant to the issue of identity in the Garver offense because the two offenses were similar in nature, and the facts of the Allen offense were integral to explain how Karnes became a suspect in the primary offense.  Furthermore, the State contends that the defense opened the door during cross-examination of Garver by making identity a contested issue. Karnes maintains that the evidence related to the Allen offense was irrelevant because it lacked sufficient similarity to render it admissible on the issue of identity in the Garver offense. 

Identity is an "elemental fact" in every criminal case with relevance apart from character conformity.  
Montgomery
, 810 S.W.2d at 387. Cross-examination of the State's identifying witnesses can raise the issue of identity when the witness is impeached about a material detail of the identification or the conditions surrounding the offense charged and the witness's identification of the defendant in that situation.  
Siqueiros v. State
, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985).  When identity is an issue in the case, evidence of an extraneous offense may be admissible to show identity. 
Lane v. State
, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); 
Avila v. State
, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.).  Typically, to be relevant to the issue of identity, extraneous offenses must share multiple common characteristics, or the device used in each offense must be so unusual and distinctive as to be like a signature.  
See, e.g.
, 
Taylor v. State
, 920 S.W.2d 319, 322 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 951 (1996).  That is, "to be admissible to show identity, an extraneous offense must be so similar to the charged offense as to mark the offenses as the defendant's handiwork." 
Johnson v. State
, 68 S.W.3d 644, 650-51 (Tex. Crim. App. 2002).  In determining similarity of the offenses for the purpose of establishing identity, courts should take into account both the specific characteristics of the various offenses and the time interval between them.  
Id
. at 651.  Sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offenses
.  Lane
, 933 S.W.2d at 519.

Among the cases upholding admission of evidence of extraneous offenses in order to prove identity is 
Walker v. State
, an aggravated rape case, which held six extraneous offenses to be sufficiently similar based on the following:

All the transactions took place at night, in the same area, within a period of one month.  In each case appellant was alone and carried a small gun.  The victims were tied in a similar manner, and robbery preceded rape in the four instances in which the victim was raped.  Appellant took all coins but pennies from the victims who had coins.  

588 S.W.2d 920, 924 (Tex. Crim. App. [Panel Op.] 1979).  In 
Ransom
, the Court of Criminal Appeals held that offenses were sufficiently similar because the offenses were three days apart and both offenses were robberies committed at gunpoint by the defendant and an accomplice. 503 S.W.2d at 813.  More recently, in 
Johnson
, the Court of Criminal Appeals held that offenses committed within a few hours of each other, directed at lone women, and involving another victim's red Ford Taurus were sufficiently similar.  68 S.W.3d at 650-52.

During cross-examination at trial, the defense questioned Garver about the circumstances surrounding the robbery.  In particular, the questioning focused on the high traffic in the area at the time of the robbery, Garver’s ability to see her assailant’s face, the length of Garver’s contact with her assailant, and the time elapsed between the robbery and her subsequent identification of Karnes in the photo-spread.  Before redirect examination of Garver, the State argued outside the presence of the jury that the defense counsel’s cross-examination had raised the issue of identity.  The State contended that the Allen offense was admissible under rule 404(b), maintaining that the Allen offense was relevant due to a similar modus operandi.  
In response, the defense denied raising the issue of identity and disputed the similarities between the Allen and the Garver offenses.  Thereafter, the court permitted the State to introduce evidence of the Allen robbery and instructed the jury to consider the extraneous offense only with regard to the issue of identity.
(footnote: 1)
 The record demonstrates that the Allen robbery was committed approximately ten minutes later than and less than a mile from the Garver robbery.  
See Johnson
, 68 S.W.3d at 651 (noting that the exactness that might be required of an offense committed at a remote period of time might not necessarily be required for an offense committed within a very short period of time).  The evidence also indicates that both offenses were committed in commercial parking lots against lone females who were in the vicinity of their vehicles.  In both the Garver offense and the Allen offense, a white Ford truck was strategically placed behind the victim’s vehicle to facilitate the robbery. 
See Pena v. State
, 867 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1993, pet. ref’d) (stating that the repeated use of the same car in similar offenses may constitute a signature).  Although the means used to effectuate the offenses were different, the goal of both offenses was to steal property from the victims by catching them off guard.
  
See Ransom
, 503 S.W.2d at 813 (stating that an identical modus operandi is not necessary to render an extraneous offense relevant to the issue of identity in the primary offense).

According deference to the trial court's reliance on its own observations and experience in making a rule 404(b) relevancy determination, we cannot say that the trial court abused its discretion by finding that the evidence of the Allen offense was relevant for the purpose of proving identity in the Garver robbery. We conclude that the proximity in time and place of each offense, the common mode in which they were committed, and the circumstances surrounding the offenses were sufficiently similar to justify admission of the extraneous offense evidence on the issue of identity.

C.  Standard of Review for a Determination Under Rule 403

We next review Karnes’s contention that the trial court abused its discretion by admitting evidence of the Allen offense because any probative value of the evidence was substantially outweighed by its prejudicial effect.  If a trial court determines that evidence of other crimes or extraneous misconduct has relevance aside from character conformity, and a timely, proper rule 403 objection is made, the trial court must make a balancing determination under rule 403.  
Montgomery
, 810 S.W.2d at 388-89.  Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  
Tex. R. Evid. 
403.  Only "unfair" prejudice provides the basis for exclusion of relevant evidence.  
Montgomery
, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.  
Id
.  Rule 403 favors admissibility and a presumption exists that relevant evidence will be more probative than prejudicial. 
 Id
.; 
DeLeon v. State
, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref’d).  In evaluating the trial court's determination under rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence.  
Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); 
Montgomery
, 810 S.W.2d at 389; 
Curtis
, 89 S.W.3d at 170.

The trial court's balancing determination must be measured against the relevant criteria by which a rule 403 decision is made.  
Tex. R. Evid.
 
403
; Mozon
, 991 S.W.2d at 847.  The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include:  (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.  
Id
.  (citing 
Montgomery
, 810 S.W.2d at 389-90).  When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it.  
Curtis
, 89 S.W.3d at 170 (citing 
Montgomery
, 810 S.W.2d at 392).

D.  Rule 403 Balancing Test

Karnes argues that the trial court abused its discretion by admitting evidence of the Allen offense because the offense was dissimilar to the Garver offense, and the prejudicial effect of the Allen offense evidence was substantial.  He further argues that the State’s need for the Allen offense evidence was low because Garver positively identified Karnes as the man who robbed her.

1.  Factor One—Degree of Relevance and Strength of Evidence

Applying the rule 403 balancing factors set out in 
Montgomery
, we first examine how compelling the Allen offense is to the issue of identity in the Garver offense.  In performing this review, we also examine the strength of the evidence connecting Karnes to the Allen offense.  
See Montgomery
, 810 S.W.2d at 390.  Although Allen could not positively identify Karnes as the man who robbed her, the evidence indicates that she was able to accurately describe and provide a license plate number for the vehicle.  Moreover, due to Allen’s report, the police were able to verify Karnes’s ownership of the vehicle.  Based on the similarity of the vehicle and suspect descriptions and the proximity in time and place of the offenses, the police were able to link the offenses and provide Garver with a photo-spread, wherein she identified Karnes as her assailant.

Thus, the evidence at trial did tend to connect Karnes to the Allen offense.  We acknowledge that extraneous offense evidence has an “inherent probativeness” by reason of the similarity of the extraneous offense to the charged offense.  
Booker
, 103 S.W.3d at 534 (quoting 
Montgomery
, 810 S.W.2d at 389-90).  However, the probative value of the extraneous offense evidence was somewhat lessened by differences, including the fact that the charged offense was committed by threats while the extraneous offense was employed by force.  Yet, in both offenses, the assailant drove a white Ford truck and robbed lone females in a commercial parking lot.

The evidence of the Allen offense must also be given less weight due to the State’s identification evidence.  As enumerated in 
Montgomery
, “[w]hen the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance."  810
 S.W.2d at 390.  At trial, Garver positively identified Karnes as her assailant, and the State introduced evidence of Garver’s prior identification of Karnes in the photo-spread.  On the other hand, however, during both cross-examination and closing argument, the defense rendered identity a disputed issue by repeatedly attacking Garver’s ability to properly identify her assailant.  Thus, we conclude that the first Montgomery factor weighs very slightly in favor of admissibility of the Allen offense for the purpose of proving identity in the Garver offense.  

2.  Factor Two—Irrational, Indelible Impression

The second 
Montgomery
 factor requires courts to evaluate the potential the extraneous offense evidence has to irrationally impress the jury.  We are mindful that a similar extraneous offense always carries the potential to create prejudice in the minds of the jury.  
Lane
, 933 S.W.2d at 520.  However, according to the Texas Court of Criminal Appeals, the impermissible inference of character conformity can be minimized through a limiting instruction to the jury.  
Id
.  Given the nature of the Allen offense, we cannot conclude that the evidence was inherently inflammatory or that it was likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the Allen offense evidence to its proper purpose.  
See Taylor
, 920 S.W.2d at 323; 
Montgomery
, 810 S.W.2d at 397.  Accordingly, we hold that the second factor weighs in favor of admissibility of the Allen offense.

3.  Factor Three—Time Needed

The third factor, the time the proponent needs to develop the extraneous offense, during which the jury is distracted from consideration of the charged offense, also weighs in favor of the admissibility of the Allen offense.  Our review of the record reveals that the State spent a relatively short length of time presenting evidence of the Allen offense.  Evidence of the Allen offense was limited to a factual synopsis of the offense and an explanation as to how Karnes was identified as a subject in the Garver offense based upon information received by Allen.  Although the guilt-innocence portion of the trial lasted only approximately half of one day, the State spent the majority of its time proving the Garver offense. 
 See Booker
, 103 S.W.3d at 536 (noting third 
Montgomery
 factor weighed in favor of admitting extraneous offense when trial time spent proving extraneous offense was less than time spent proving charged offense). The third 
Montgomery
 factor weighs in favor of admissibility of the Allen offense.

4.  Factor Four—State's Need

Finally, we consider the fourth 
Montgomery
 factor, the State’s need for the extraneous offense evidence.  The State may not introduce extraneous offenses as circumstantial evidence of an element in its case-in-chief if that element can readily be inferred from other uncontested evidence.  
DeLeon
, 77 S.W.3d at 312 (citing 
Clark v. State
, 726 S.W.2d 120, 122 (Tex. Crim. App. 1986)).  However, when identity is “a hotly contested issue,” the State’s need to offer evidence of an extraneous offense is strong.  
See Lane
, 933 S.W.2d at 520-21.  

At trial, identity was the seminal issue in dispute and the crutch of Karnes’s defense.  For example, although Garver had positively identified Karnes as her assailant in the photo-spread, the defense attacked her identification during cross-examination by questioning her ability to properly identify her assailant.  Further, during closing arguments, the defense vigorously contested whether Karnes was proven to be Garver’s assailant beyond a reasonable doubt.  Moreover, the evidence regarding the Allen offense was interrelated to the Garver offense because it demonstrated how Karnes was identified as a suspect.  Thus, we conclude that the fourth 
Montgomery
 factor weighs heavily in favor of admissibility of the Allen offense.

Our review of the record and the relevant criteria under rule 403 demonstrates that the probative value of the Allen offense evidence was not substantially outweighed by its prejudicial impact.  Consequently, we hold that the trial court did not abuse its discretion in admitting evidence of the Allen extraneous offense.  
See Montgomery
, 810 S.W.2d at 392-93.  Having determined that evidence of the Allen offense was relevant to the issue of identity in the charged offense and that the probative value was not substantially outweighed by its prejudicial effect, we overrule Karnes’s first point.  

IV.  Extraneous Offense Victim-Impact Evidence

I
n his second point, Karnes argues that the trial court erred by admitting extraneous offense victim-impact evidence at the punishment phase of trial.  He maintains that the victim-impact evidence was extremely prejudicial because it constituted a significant portion of the State’s evidence during the punishment phase of trial.  He further contends that the trial court’s instruction to disregard was insufficient to cure the harm already procured by the evidence. 
 A.  
Error Analysis

A trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of trial.  
See Moreno v. State
, 1 S.W.3d 846, 861 (Tex. App.—Corpus Christi 1999, pet. ref'd).  Moreover, the Texas Code of Criminal Procedure permits the introduction of evidence on any matter the trial court deems relevant to sentencing, including evidence of other crimes or bad acts.  
See
 Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(a)(1) (Vernon Supp. 2003).  However, victim impact testimony regarding extraneous crimes is inadmissible during the punishment phase of trial.  
See Cantu v. State
, 939 S.W.2d 627, 637 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 994 (1997).   Victim-impact testimony based on an extraneous offense is irrelevant, unduly prejudicial, and potentially damaging to a defendant’s right to receive a fair punishment hearing.  
See
 
Boston v. State
, 965 S.W.2d 546, 550 (Tex. App.—Houston [14
th
 Dist.] 1997, no pet.).  Therefore, victim-impact testimony is limited to the victim named in the indictment. 
 
See
 
Cantu
, 939 S.W.2d at 637.

Karnes complains that the trial court erred by permitting victim-impact testimony from three witnesses who were called to testify regarding prior crimes or acts of misconduct.  During the punishment phase of trial, the State called Nora Villegas (“Villegas”) to testify about an extraneous offense that occurred two days prior to the Garver offense.  Villegas testified that upon parking in a parking lot of a K-Mart in Arlington, Texas, she was approached by Karnes after he exited a white truck that was parked behind her.  She described how Karnes had wedged his body between her open car door, threatened her with violence, and demanded her wallet.  The State then asked Villegas how the event affected her life, wherein she responded that, since the robbery, she is scared anytime she parks her car at a store, and she always feels like someone is going to approach her.  She also testified that she was scared at the time of the robbery because she was pregnant and that she moved away from the area the next day.

During the entire course of Villegas’s testimony, the defense made no objection that her testimony constituted impermissible victim-impact testimony. Instead, the defense objected only that Villegas’s testimony was irrelevant, highly prejudicial, and below the threshold requirement of admissibility. Therefore, although Karnes challenges Villegas’s testimony as inadmissible victim-impact testimony, we conclude that Karnes has failed to preserve any error regarding its admission because the objection at trial does not comport with the complaint raised on appeal.  
See Ibarra v. State
, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999), 
cert. denied
, 531 U.S. 828 (2000).

Karnes also complains that the trial court erred by allowing victim-impact testimony from two of the State’s other witnesses, Judy Allen and Rizla Kay Barmore
(footnote: 2) (“Barmore”).  Prior to the development of Allen’s testimony, Karnes conceded that Allen could testify to the extraneous offense; however, he lodged his objection to any victim-impact evidence based on the offense, contending such evidence was irrelevant.  The trial court overruled Karnes’s objection, and thereafter, Allen testified that she 
had sustained numerous physical injuries and would need knee surgery as a result of the extraneous offense.  She further testified that since the incident she had suffered from nightmares and had constantly thought about lying on her back in the parking lot and the tire coming dangerously close to her head.  Karnes objected to the admission of extraneous offense victim-impact evidence during the testimony of Barmore, as well.  After the trial court overruled his objection, Barmore testified that she frequently had nightmares as a result of the robbery and thereafter became too scared to work for convenience stores, despite having done so for approximately twenty years.

After reviewing the record, we conclude that the trial court erred by permitting victim-impact testimony from both Allen and Barmore.

B.  Harm Analysis
.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).

Constitutional error is "an error that directly offends the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply."  
Alford v. State
, 22 S.W.3d 669, 673 (Tex. App.—Fort Worth 2000, pet. ref'd).  Constitutional error is only present when a ruling is constitutionally required; however, mere misapplication of the rules of evidence is not constitutional error.  
Id
. Thus, erroneously admitted victim-impact evidence does not amount to constitutional error.  
Lindsay v. State
, 102 S.W.3d 223, 228 (Tex. App.—Houston [14
th
 Dist.] 2003, pet. filed).

Because we determine that the error is not constitutional, rule 44.2(b) is applicable.  Therefore, we are to disregard the error unless it affected appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b).  
A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict. 
 King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.
  In making this determination, we review the record as a whole. 
 Kotteakos,
 328 U.S. at 764-65, 66 S. Ct. at 1248.

In the present case, several factors are present that, when considered together, prevent this error from being a violation of Karnes’s substantial rights. For example, prior to the presentation of his case, Karnes again objected to the extraneous offense victim-impact testimony by Villegas, Allen, and Barmore. The trial court sustained Karnes’s objection, instructed the jury to disregard all victim-impact evidence not related to the Garver offense, and polled the jury to affirm each person’s ability to follow the curative instruction.

As a general rule, error in admitting improper evidence may be corrected by a withdrawal of the evidence and an instruction to disregard, except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.  
Waldo v. State
, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).  The effectiveness of curative instructions is determined on a case-by-case basis.  
See Swallow v. State
, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992).  However, we must presume that the jury followed the trial court's instructions, absent any indicia to the contrary.  
Colburn v. State
, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).  In reviewing the record, we have found no indication that the trial court’s instruction to disregard was insufficient to cure the harm procured by the extraneous offense victim-impact testimony.  In fact, the trial court specifically polled the jury to ensure that the jury was able to disregard the evidence in determining Karnes’s punishment.

The record also demonstrates that the victim-impact testimony comprised only a small portion of the evidence at the punishment phase of trial and that the jury was presented with other evidence in order to assess the proper punishment for Karnes.  The jury heard victim-impact testimony from Garver about the changes in her life as a result of the robbery.
(footnote: 3)  Officer Ted Eby of the Arlington Police Department testified that, approximately two weeks before the Garver offense, he arrested Karnes for shoplifting at a Wal-Mart Supercenter and found him in possession of an illegal switchblade. The jury also knew about Karnes two prior felony convictions, as well as the other extraneous offenses testified to at sentencing.

Additionally, we see nothing in the record which indicates that the State unduly emphasized the victim-impact testimony.  During closing argument, the State focused on Karnes’s numerous convictions and acts of misconduct throughout the years, but did not mention the impact the crimes had on the victim’s lives.  The only reference to the victim-impact evidence was a brief reminder to the jury of the injuries that Allen had sustained as a result of the extraneous offense.  Moreover, despite the evidence of his prior convictions and misconduct, the jury assessed a mid-range punishment: a fifty-five year sentence out of a range of twenty-five years to ninety-nine years.

Under these circumstances, 
we conclude that, in the context of the entire case against Karnes, the trial court’s error in admitting extraneous offense victim-impact evidence did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
See 
Tex. R. App. P. 44.2(
b). Accordingly, we overrule Karnes’s second point.

V.  Conclusion

Having overruled Karnes’s two points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL F: HOLMAN, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: October 30, 2003

FOOTNOTES
1:
Relying on 
Johnson
, the court held that the evidence was admissible regardless of whether or not the defense raised the issue of identity.  68 S.W.3d at 644.

2:
In 1997, Karnes was convicted for robbery by threats after robbing Barmore as she worked the night shift at an E-Z Mart.

3:
Garver testified that she was still devastated by the incident and often broke down and cried when she thought about it.  She indicated that she constantly was on the lookout for the white truck and that she never stepped onto the property at Walgreens again.