02-11-092-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00092-CR

 

 


 
 
 Christopher Mark Taylor
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 3 OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          In
three points, appellant Christopher Mark Taylor appeals his conviction for
online harassment.[2]  We affirm.

Background
Facts

          Scheri
Couch manages a website by which she provides psychic services under the name
“Sataya.”[3]  Through the website, Couch’s
customers may chat with her and may obtain psychic readings.  In 2009, Couch
began to receive messages through the chat function from someone who was “very
abrupt, very rude, [and] sometimes obscene.”  On approximately September 23, 2009,
Couch received a package in the mail with “stylized writing” and a “love stamp
for the postage stamp.”  The package included what appeared to be a used condom
(the condom actually contained soy milk).  Then, on September 27, Couch
received a message that stated in part,

Here is the deal Shitaya!  [Y]ou are going to stop
putting . . . curses on me and my family.  You are a fake dumbslut; your
reviews all show that you are NOT real!  [Y]ou are not a descendent and [I] am
frankly really tired of all this . . . that you are causing.  You are a witch .
. . .

          On
October 6, Couch received a chat message that purported to be from her
hairdresser, Renee Adam.[4]  The person pretending to
be Adam invited Couch to lunch at a restaurant.  Couch, believing that Adam had
actually sent the message, went to the restaurant, but Adam was not there.  When
Couch called Adam, Adam said that she did not know anything about the lunch
meeting.  Couch realized that the chat message she had received had not been
sent by Adam, and Couch became very frightened.  She felt uneasy going to the
grocery store or “anywhere to do anything,” and she became “fearful of the chat
function on [her] website.”  Later in October, when Couch received another chat
message that purported to be from Adam, Couch responded, “You are not, nor have
you ever been [Adam].”  Couch told the person who was masquerading as Adam that
she knew he had used a myriad of names while chatting on the website.  The person
responded, “[S]peaking of used[,] [I] hope you enjoyed your care package.”  Later,
Couch received a package containing panties that appeared to be soiled; the
package also contained a note that accused Couch of being a “fake psychic.”[5]

          The
Lewisville Police Department (LPD) investigated Couch’s claim of harassment.  LPD
Detective William Wawro discovered that the chat messages that Couch had
received had been sent from a computer at the University of North Texas. 
Employees of the university gave information to Detective Wawro that caused him
to suspect that the messages had been sent by appellant.  During appellant’s
meeting with Detective Wawro, he confessed that he had sent the messages to Couch
and had mailed the condom and panties to her.  Appellant explained that he used
Adam’s name because he had seen it on Couch’s Facebook webpage.  He claimed
that he had pretended to be Adam because he needed a psychic, and he wanted to
determine the validity of Couch’s claim to have psychic abilities.  Detective
Wawro arrested appellant.  Appellant eventually sent Couch a letter to apologize
for his actions.

          The
State charged appellant with online harassment.  Appellant retained counsel and
pled not guilty.  At trial, he testified that he had looked for a psychic
through an internet search and had found Couch.  He had determined to test
Couch’s psychic ability by arranging a lunch date under the guise that he was
Adam.  According to appellant, Couch gave him her home address when he conveyed
to her that he needed psychic help and wanted to have a meeting.  Appellant
testified that he sent the used condom to symbolize his belief that while
giving love advice, Couch took people’s money “and then just [threw] them
away.”  He said that he sent the panties for symbolic purposes as well but that
he did not intend to upset Couch.  Appellant said that when he learned that he
had upset Couch, he wanted to apologize to her immediately.

          After
the parties presented closing arguments and the jury deliberated for less than
twenty minutes, the jury convicted appellant.  Appellant testified again in the
punishment phase of his trial.  The trial court assessed appellant’s punishment
at 365 days’ confinement, but the court suspended the imposition of the
sentence and placed him on community supervision.  Appellant brought this
appeal.

Admission of Extraneous Evidence

          In
his first point, appellant argues that the trial court abused its discretion by
admitting evidence that he had sent the condom and panties to Couch, which
appellant asserts were extraneous acts.[6]  Before trial, appellant
filed a motion in limine, seeking to exclude evidence of “any and all other
alleged crimes, wrongs, or acts” that he had committed.  Outside of the
presence of the jury, the trial court held a hearing on appellant’s motion.  Appellant
urged the trial court to exclude evidence concerning the condom and panties
that he had sent to Couch in September 2009 and November 2009, respectively.  The
trial court decided to admit evidence about the condom but withheld its ruling
on evidence of the panties.  During appellant’s opening statement, his counsel
conceded that appellant sent a message to Couch but argued that appellant 

wasn’t intending to harm her. . . .  He was testing her
psychic abilities.

          . . .  [W]hile it may not have been the best
course of action, he had no intent to harm her.  The facts are the facts, but
what we don’t have here is an intent to harm somebody, okay?

During
the trial, appellant objected again, under rules of evidence 403 and 404(b), to
the admission of evidence concerning the condom and panties, but the trial
court overruled his objections.

          We review
the trial court’s admission of evidence under an abuse of discretion standard.  Price
v. State, 351 S.W.3d 148, 150 (Tex. App.—Fort Worth 2011, pet. ref’d); see
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh’g).  Under this standard, the trial court’s ruling will be upheld as long
as it falls within the “zone of reasonable disagreement.”  Karnes v. State,
127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, pet. ref’d), cert. denied,
129 S. Ct. 2391 (2009).  If the trial court’s ruling on the
admission of evidence is correct under any theory of law, even if the trial
court gives the wrong reason for its ruling, we must affirm the court’s
decision to admit the evidence.  Felan v. State, 44 S.W.3d 249, 254
(Tex. App.—Fort Worth 2001, pet. ref’d).

          “Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident . . . .”
 Tex. R. Evid. 404(b); see Montgomery, 810 S.W.2d at 387–88; see also
Segundo v. State, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that
the defendant is generally to be tried only for the offense charged, not for
any other crimes), cert. denied, 130 S. Ct. 53 (2009).  The State, as
the proponent of extraneous offense evidence, bears the burden of showing
admissibility.  Russell v. State, 113 S.W.3d 530, 535 (Tex. App.—Fort
Worth 2003, pet. ref’d).  “Whether extraneous offense evidence has relevance
apart from character conformity, as required by Rule 404(b), is a question for
the trial court.”  Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

          To
obtain a conviction, the State was required to prove that when appellant sent
the chat message to Couch while inviting her to lunch and while claiming to be
Adam, he did so without Adam’s consent, with the intent to cause Couch to
reasonably believe that Adam sent the message, and with the intent to harm or
defraud any person.  See Tex. Penal Code Ann. § 33.07(b).  The penal
code defines “harm” as “anything reasonably regarded as loss, disadvantage, or
injury.”  Id. § 1.07(a)(25) (West Supp. 2011).  “There is no requirement
the harm be physical harm.”  Hudspeth v. State, 31 S.W.3d 409, 411 (Tex.
App.—Amarillo 2000, pet. ref’d); see also Halay v. State, No. 03-07-00327-CR,
2008 WL 5424095, at *7 (Tex. App.—Austin Dec. 31, 2008, no pet.) (mem. op., not
designated for publication) (“[E]ven emotional harm and aggravation . . . can
reasonably be considered loss, disadvantage, or injury.”); White v. State,
No. 14-05-00454-CR, 2006 WL 2771855, at *2 (Tex. App.—Houston [14th Dist.]
Sept. 28, 2006, pet. ref’d) (mem. op., not designated for publication) (holding
that emotional distress was sufficient to qualify as harm under section
1.07(a)(25)).

          At
trial, through his opening statement[7] and through his
testimony, appellant disputed that when he sent the message in which he
masqueraded as Adam, he had the intent to harm Couch.  He claimed that he sent
the message only to test Couch’s psychic abilities.  It is at least subject to
reasonable disagreement whether evidence of appellant’s sending disturbing,
sexually-themed items (a seemingly used condom and cut and seemingly soiled panties)
before and after he pretended to be Adam was admissible to show his intent to
harm Couch (at least emotionally) and to rebut his defensive theory that he
wanted only to test her psychic abilities when he pretended to be Adam.  See Tex.
R. Evid. 404(b) (stating that extraneous evidence may be admissible to show
intent); Moses, 105 S.W.3d at 626 (“Rebuttal of a defensive theory . . .
is also one of the permissible purposes for which relevant evidence may be
admitted under Rule 404(b).”); Morgan v. State, 692 S.W.2d 877, 880
(Tex. Crim. App. 1985) (explaining that when a defendant’s intent may not be
inferred from the criminal act itself, extraneous evidence that is relevant to
intent is generally admissible).  This is especially true with regard to the
panties, which appellant sent in November 2009, after he knew that Couch had
discovered that he was not Adam and when he had already expressed his
determination that Couch was a “fake” psychic.  We hold that the trial court’s decision
to admit evidence concerning the condom and panties, which appellant sent
before and after he committed the offense, may be justified on the basis that
the evidence implies his intent while committing the offense.  See Tex.
R. Evid. 404(b); Tate v. State, 981 S.W.2d 189, 190, 193 (Tex. Crim.
App. 1998) (holding that evidence of a threat made by a decedent a month or two
before his death was admissible under rule 404(b), when offered by the
defendant who was charged with murder and asserted self-defense, because the
threat was probative of the decedent’s state of mind to possibly harm the
defendant on the date of the offense); Amis v. State, 87 S.W.3d 582, 587
(Tex. App.—San Antonio 2002, pet. ref’d) (holding similarly).

          We must also determine whether the evidence was
admissible under rule 403.  See Tex. R. Evid. 403
(stating that relevant evidence may be excluded “if its probative value is
substantially outweighed by the danger of unfair prejudice”).  If a trial court
determines that evidence of an extraneous act has relevance aside from
character conformity, and a timely, proper rule 403 objection is made, the
trial court must make a balancing determination under rule 403.  Karnes,
127 S.W.3d at 191.  As we explained in Karnes,

Only “unfair”
prejudice provides the basis for exclusion of relevant evidence.  Unfair
prejudice arises from evidence that has an undue tendency to suggest that a
decision be made on an improper basis, commonly an emotional one.  Rule 403
favors admissibility and a presumption exists that relevant evidence will be
more probative than prejudicial.  In evaluating the trial court’s determination
under rule 403, a reviewing court is to reverse the trial court’s judgment
“rarely and only after a clear abuse of discretion,” recognizing that the trial
court is in a superior position to gauge the impact of the relevant evidence. 

 

          The
trial court’s balancing determination must be measured against the relevant
criteria by which a rule 403 decision is made. The relevant criteria in
determining whether the prejudice of an extraneous offense substantially
outweighs its probative value include:  (1) how compellingly the extraneous
offense evidence serves to make a fact of consequence more or less probable—a
factor which is related to the strength of the evidence presented by the
proponent to show the defendant in fact committed the extraneous offense; (2)
the potential the other offense evidence has to impress the jury “in some
irrational but nevertheless indelible way”; (3) the time the proponent will
need to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and (4) the force of the proponent’s
need for this evidence to prove a fact of consequence, that is, does the
proponent have other probative evidence available to him to help establish this
fact, and is this fact related to an issue in dispute.  When the relevant
criteria are viewed objectively and lead to the conclusion that the danger of
unfair prejudice substantially outweighs the probative value of the proffered
evidence, the appellate court should declare that the trial court erred in
failing to exclude it.

 

Id. at
191–92 (citations omitted).

          Appellant
asserts that there is a “high probability that [his] acts inflamed the jury.”  We
agree that evidence of the nature of a used condom and cut and soiled panties might
carry the danger of the jury being prejudiced, but not unfairly so.[8] 
Therefore, we cannot conclude that the trial court abused its discretion by
siding with the presumption of admissibility under the facts of this case.

          As
we have already explained, a trial court could reasonably conclude that the
challenged evidence served to make appellant’s intent to harm Couch, which was
an element of his crime under section 33.07(b) of the penal code and which was
the principal disputed issue in the case, more probable.  Moreover, a trial
court could have rationally found that the challenged evidence related to appellant’s
intent to harm Couch and rebutted appellant’s defensive theory more poignantly
than other evidence at the State’s disposal, including logs of some of the chat
messages that he had sent to her.  The State did not need significant time to
develop the evidence concerning the condom or panties.  Couch specifically
referred to the condom only four times in her testimony that comprises over
thirty pages of the reporter’s record, and she did not refer to the panties at
all.  Similarly, the majority of Detective Wawro’s and appellant’s testimony in
front of the jury was focused on matters unrelated to the condom or panties.

          Because
we conclude that the trial court did not abuse its discretion by determining
that the evidence of the condom and panties was not substantially more
prejudicial than probative, we hold that the trial court did not abuse its
discretion by refusing to exclude the evidence under rule 403.  See Tex.
R. Evid. 403; Garcia v. State, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006)
(“[W]hen determining whether evidence is admissible under Rule 403, we do not
consider just whether the evidence is more prejudicial than probative, we
consider whether the probative value is substantially outweighed by the
danger of unfair prejudice.”), cert. denied, 549 U.S. 1224 (2007).

          Because
the admissibility of evidence concerning the condom and panties under rules 403
and 404(b) is within the zone of reasonable disagreement, we hold that the
trial court did not abuse its discretion by admitting the evidence, and we
overrule appellant’s first point.  See Tex. R. Evid. 403, 404(b); Karnes,
127 S.W.3d at 189, 191–92.

The
Admissibility of Information from Couch’s Website

          In
his second point, appellant argues that the trial court erred by ruling that
information from Couch’s website was inadmissible.  During Couch’s initial
testimony, appellant’s counsel, through cross-examination, asked her several
questions about her qualifications as a psychic and about the content of her
website.  In particular, the following exchange occurred:

          [DEFENSE COUNSEL:]  Did you undergo any testing
to become a psychic?

          A. No, I [did] not.

          Q. You didn’t take a series of tests that
measure, like, how clairvoyant you are or your --

          A. I have taken --

          Q. Let me finish my question, please.  Your
extrasensory perceptions?  You’ve undergone testing, correct?

          A. I have undergone testing that was reviewed
by my own --

          [DEFENSE COUNSEL]:  Objection.  Nonresponsive.

          THE COURT:  Sustained.

          Q. [DEFENSE COUNSEL:]  And you advertise the
fact that you’ve undergone testing, correct?

          A. I don’t believe I do.

          . . . .

          Q. Okay.  All right.  So when you underwent
testing for determining which psychic qualities you are stronger in, whether it’s
clairvoyance or telling the future or reading palms, whatever, were there
tests?

          . . . .

          A. I have not been tested by an authoritative
body as to my psychic abilities.

          Near
the end of Couch’s initial testimony, appellant’s counsel told the trial court,
“I have some printouts that are probably sitting on my desk that directly
contradict what she has been testifying to.  It’s in my file.”  The trial court
told counsel that he could retrieve the printouts during a recess.

          Counsel
apparently did so, and he eventually sought to recall Couch to impeach her
testimony.  During counsel’s voir dire examination of Couch outside of the
jury’s presence, he gave her a printout from her website, which showed that
Couch had claimed to have tested in the top six percent in “ESP perception or
sensories.”  When counsel asked Couch whether the printout conflicted with her
previous testimony about whether she had been tested, she said, “To my way of
thinking, what I thought you were asking me, as far as any academic testing
such as at a major university, that did not happen.”  Although counsel argued
that the printouts should be admitted because they affected Couch’s credibility
and would be “evidence of impeachment,”[9] the trial court excluded
the printouts on the basis that they did not qualify as prior inconsistent
statements.

          Assuming,
without deciding, that the trial court abused its discretion by excluding
evidence of the printouts, which appeared to conflict with Couch’s prior
testimony that she had not been tested to become a psychic and had not
advertised that she had been tested, we must review that error for harm.  Because
the error concerns the exclusion of evidence, we apply rule 44.2(b) and
disregard the error if it did not affect appellant=s
substantial rights.[10]  Tex. R. App. P.
44.2(b); see Walters v. State, 247 S.W.3d 204, 219 (Tex. Crim. App.
2007); James v. State, 102 S.W.3d 162, 179 (Tex. App.—Fort Worth 2003,
pet. ref’d).  A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury=s
verdict.  King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)
(citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239,
1253 (1946)).  Conversely, an error does not affect a substantial right if we
have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  In making this
determination, we review the record as a whole, including any testimony or
physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, and the character of the alleged error and how
it might be considered in connection with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the
State=s theory
and any defensive theories.  Id.

          To
obtain a conviction under section 33.07, the State was required to prove that
(1) appellant engaged in certain acts, and (2) he did so with a specific
intent.  See Tex. Penal Code Ann. § 33.07(b).  At most, admission of the
printouts would have shown that Couch’s testimony on her qualifications and
testing was inconsistent with some of her representations on her website.  The printouts’
admission therefore could have affected the jury’s view of Couch’s credibility. 
But appellant admitted before trial and at trial that he engaged in the acts
required by the statute.  Specifically, he conceded that he participated in chats
with Couch on her website, and during one of those chats, he masqueraded as
Adam, without Adam’s consent, while inviting Couch to a lunch date.  Because of
appellant’s admissions, weakening Couch’s credibility on a collateral matter such
as this would not likely have changed the jury’s resolution of these elemental
facts against appellant.  See id. § 33.07(b)(1) (requiring, as elements
of the offense, that a person sent an electronic communication that references
a name of a person without obtaining the person’s consent).  As we explained above,
appellant’s defense was not based on attacking the factual components of
Couch’s testimony that concerned appellant’s actions; rather, the defense challenged
his intent in sending the message in which he pretended to be Adam.[11] 
See id. § 33.07(b)(2)–(3) (explaining that a violation of the statute
requires the sender of the message to have the intent to deceive the recipient of
the message and to harm or defraud someone).  We cannot conceive how weakening
Couch’s credibility about the contents of her website would have affected the
jury’s implicit rejection of appellant’s defensive theories relating to his
intent in sending the message.

          For
these reasons, we hold that even if the trial court abused its discretion by
excluding evidence of the printouts from Couch’s website, this potential error
did not affect appellant’s substantial rights.  See Tex. R. App. P.
44.2(b); Walters, 247 S.W.3d at 219.  We overrule appellant’s second
point.

The
Lack of a Limiting Instruction

          In
his third point, appellant contends that the trial court erred by failing to
include a limiting instruction in the jury charge concerning the proper use of
the extraneous acts discussed above.  See Tex. R. Evid. 105(a).  During
the pretrial hearing on appellant’s motion in limine, after the trial court
ruled that evidence of appellant’s sending the condom to Couch would be
admissible, the following colloquy occurred between appellant’s counsel and the
trial court:

          [DEFENSE COUNSEL]: Judge, during the trial I
would still request a limiting instruction of some sort.

          THE COURT:  Oh. The -- okay. You’ve got the
limiting instruction you want me to give?

          [DEFENSE COUNSEL]:  Actually, I do on my
computer. I assume we’ll probably have it --

          THE COURT:  Yeah, we’ll probably have it. 
[Emphasis added.][[12]]

During
the trial, however, when the jury heard the evidence about the condom and
panties, appellant did not request a limiting instruction.  After each side
rested and closed, as the parties were discussing the jury charge, appellant
requested a limiting instruction concerning the extraneous offenses, but the
trial court overruled the request.

          Appellant’s
request came too late.  The court of criminal appeals has explained that “a
limiting instruction concerning the use of extraneous offense evidence should
be requested, and given, in the guilt-stage jury charge only if the defendant
requested a limiting instruction at the time the evidence was first admitted.” 
Delgado v. State, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); see Hammock
v. State, 46 S.W.3d 889, 893–94 (Tex. Crim. App. 2001).  We have
applied this principle to hold that a defendant forfeits his request for a
jury-charge instruction by not requesting the instruction upon the admission of
the evidence.  See Gunter v. State, 327 S.W.3d 797, 802 (Tex. App.—Fort
Worth 2010, no pet.); Smith v. State, 316 S.W.3d 688, 700 (Tex. App.—Fort
Worth 2010, pet. ref’d).  Thus, in accordance with precedent from the court of
criminal appeals and our own court, we hold that appellant forfeited his
complaint about the lack of a limiting instruction in the jury charge by not timely
requesting such an instruction when evidence of extraneous acts was presented
to the jury.  We overrule appellant’s third point.

Conclusion

          Having
overruled all of appellant’s points, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 22, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Act of June 1,
2009, 81st Leg., R.S., ch. 911, § 1, 2009 Tex. Gen. Laws 2441, 2441–42 (amended
2011) (current version at Tex. Penal Code Ann. § 33.07 (West Supp.
2011)).  Because the relevant portion of the former “Online Harassment” section
of the penal code is the same as the current “Online Impersonation” statute, we
will cite to the current statute throughout this opinion.  See Tex.
Penal Code Ann. § 33.07(b).





[3]Couch, who has taken some
collegiate psychology classes and charges $3 per minute for her services,
claims to be a direct descendant of Jesus and Mary Magdalene.





[4]Adam confirmed at trial
that she did not send the message.  She said that she was shocked and surprised
to learn that someone had used her name to mislead Couch.





[5]The panties, which had
been cut, actually had Nutella on them.





[6]We will presume, without
deciding, that appellant’s sending the condom and panties does not qualify as
admissible contextual evidence.  See Moore v. State, 165 S.W.3d 118, 122–25
(Tex. App.—Fort Worth 2005, no pet.).  We will also broadly construe
appellant’s first point as contesting the admissibility of the challenged
evidence under both rules of evidence 403 and 404(b).  See Tex. R. Evid.
403, 404(b).





[7]“[A] defense opening
statement . . . opens the door to the admission of extraneous-offense evidence
. . . to rebut the defensive theory presented in the defense opening
statement.”  Bass v. State, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).





[8]We note that the potential
for evidence about such items to “inflame” the jury, as appellant argues,
demonstrates the probative quality of evidence to show appellant’s intent to harm
Couch when he sent the items to her and when he impersonated Adam.





[9]Likewise, on appeal,
appellant argues that the printouts should have been admitted because they
affected Couch’s credibility.





[10]Although appellant claims
on appeal that the trial court’s exclusion of the evidence violated his Sixth
Amendment right of cross-examination and also violated his state constitutional
rights, he did not make these arguments in the trial court, and he therefore
forfeited them.  See Tex. R. App. P. 33.1(a)(1); Reyna v. State,
168 S.W.3d 173, 179 (Tex. Crim. App. 2005); Whitfield v. State, 137
S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.) (mem. op.).





[11]In his closing argument,
appellant’s counsel conceded that appellant had made “bad choices,” but counsel
argued, like he had in his opening statement, that appellant’s intent was to
only test Couch, not to deceive or harm her.





[12]We reject appellant’s
characterization of this exchange as a request for a limiting instruction that
the trial court denied.