BRITT V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-123-CR

TERRY LYNN BRITT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Terry Lynn Britt appeals his conviction and forty-five year sentence for burglary of a habitation.  In appellant’s first point, he contends that the evidence is factually insufficient to establish that he committed the offense.  In his second and third points, appellant complains that the trial court abused its discretion by taking judicial notice of information contained in an affidavit given by appellant while he was in police custody in violation of the Fifth and Fourteenth Amendments of the United States Constitution and article 38.22 of the code of criminal procedure. We affirm.

II.  Background Facts

On May 17, 2004, Brandi Howard, a police officer with the Mansfield Police Department, responded to a call that a residential alarm was going off at Deborah Swanson’s house.
(footnote: 2)  When Officer Howard arrived at the house, she saw appellant driving off in a blue pickup truck, and she followed him.  Officer Howard pulled appellant over after he attempted to turn the wrong way down a one-way street.  Officer Howard then asked appellant for his identification, but appellant said that he did not have any and handed her a pink slip from a citation.  After calling in the information on the pink slip, Officer Howard asked appellant to get out of the truck, but appellant drove off.  

On May 18, 2004, Officer Howard viewed a photo lineup and identified Jimmy Standifer, whom she thought was appellant, as being the driver of the truck the previous day.  However, after seeing Standifer in person, she realized that he was not appellant because he did not have a tattoo on the left side of his neck.  Officer Howard then viewed a second photo lineup and positively identified appellant as being the driver of the truck.  

The jury found appellant guilty of the offense of burglary of a habitation, answered true to the habitual offender notice, and assessed his punishment at forty-five years in the Institutional Division of the Texas Department of Criminal Justice. 

III.  Factual Sufficiency

In appellant’s first point, he argues that the evidence is factually insufficient to establish that he committed the offense of burglary of a habitation.  

A.  Standard of Review

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Facts

Paul Klucking, an officer with the Fort Worth Police Department, testified that on May 17, 2004, he arrived at Swanson’s house at approximately 2:35 p.m. to relieve the first officer on the scene.  He said that when he got to the house, he noticed that the back door that led into the sunroom was open and appeared to have been kicked in.  He stated that the back door jamb was laying on the floor.  Officer Klucking said that the smaller shed on the property had been broken into as well.
(footnote: 3)  
Officer Klucking testified that Swanson was not at home when he arrived at her house, but that she arrived at the house at approximately 4:30 p.m.  Swanson then walked through the house and listed items that were missing. 

J.J. Jeanes, an officer with the Fort Worth Police Department, testified that when he arrived at the house, he noticed that it looked like someone had kicked in the back door with force and had gone through the items in the house.  He stated that he dusted for fingerprints in the house, but that he did not find any prints.  Officer Jeanes said that it was unusual not to find any prints because someone lived in the house.  However, he stated that there was a dish towel in the office room and that someone could destroy a fingerprint if he or she wiped an item down when it had a fingerprint on it.
(footnote: 4)  Officer Jeanes testified that he walked through the entire house and saw that several rooms were in disarray, including items being turned over.  Additionally, Officer Jeanes said that the smaller shed in the backyard was open and that it looked like someone had pried the lock off the door.

Swanson testified that on May 17, 2004, she had been at the hospital most of the day with her mother.  She stated that when she got back to her mother’s assisted living center, the director of the center told her that the police were looking for her because someone had broken into her house.  Swanson stated that when she arrived at the house, she noticed that the door frame to the back door was damaged.  Swanson testified that she was able to identify the items that were missing, including briefcases, a jewelry box, and jewelry. She said that some furniture had been overturned and that all of the closet doors were open and that it appeared that someone had gone through them. She estimated that the total value of the missing items was $4,300.  Swanson stated that she did not give anyone permission to be in her house.

Officer Howard testified that she responded to a call that a residential alarm was going off at Swanson’s house.  As she was driving down the street that Swanson’s house was on, Officer Howard saw a blue pickup truck pulling out of Swanson’s driveway, and she began to follow the truck.  Officer Howard testified that she saw lawn mower handles sticking out of the back of the truck bed.  Officer Howard stated that she pulled appellant over after he attempted to make a left turn on a one-way street when traffic was going in the opposite direction. 

After pulling appellant over, Officer Howard got out of her patrol car and asked appellant for his identification.  Appellant did not have any identification on him, but he instead gave Officer Howard a pink copy of a citation.  Officer Howard testified that appellant seemed nervous and that his hands were shaking.  She stated that appellant was an older white male, he appeared to be in his forties, he did not seem “very clean,” he had gray hair and was missing some teeth, he was wearing a gray and white cowboy shirt, and he had a green tattoo on the left side of his neck.

After calling in the information on the pink slip, Officer Howard walked back to appellant’s truck and noticed several items in the bed of the truck. Officer Howard then opened the driver’s door and asked appellant to step out of the truck.  Appellant said “no” and then drove off in the wrong direction. Officer Howard stated that she tried to grab appellant, but that she could not pull him out of the truck because he had his seat belt on.  She said that as she was trying to grab appellant, the back tire of the truck ran over her foot.  Officer Howard testified that appellant was stopped for approximately five to ten minutes, but that she saw his face for approximately one minute.  Officer Howard testified that she did not chase appellant after he drove off because the Fort Worth Marshal’s office had a no-pursuit policy.

The following day, Officer Howard viewed a photo lineup and picked  Standifer, whom she believed to be appellant, out of the lineup. However, after Standifer was brought into the police station, she realized that he was not appellant because Standifer did not have the tattoo on the left side of his neck.  Officer Howard testified that she thought that appellant was in one of the pictures of the lineup and that was why she chose Standifer.  However, after she saw appellant, she knew that he was the individual driving the truck on May 17.

Standifer testified that on May 17, 2004, he lent his GMC pickup truck to appellant because appellant told him that he needed a truck to exchange some tools.  Standifer stated that he knew appellant through appellant’s girlfriend, Melinda Martin.  He said that approximately three hours after appellant borrowed the truck, appellant called him and told him that the truck had run out of gas.  Standifer then drove to the location where appellant said the truck had run out of gas and noticed that the key was in the ignition, but appellant was not there.  He stated that he saw a lawn mower, ladder, and hedge trimmer in the bed of the truck.  After starting the truck, Standifer testified that he dumped the lawn mower and hedge trimmer on the side of the road and kept the ladder in the truck because he thought the ladder belonged to appellant.

Standifer then learned that the police were looking for him, and he went to the police station and gave a statement of what had occurred on May 17. Standifer drove the police to the area where he dumped the lawn mower and hedge trimmer, but the items were no longer there.  He stated that there was not anything in the truck when he lent it to appellant to use.  Additionally, Standifer stated that Swanson’s house was not too far from his house. Standifer testified that he had two prior burglary of a habitation convictions in 1983 and 1985 and that he did not have a tattoo on the left side of his neck. 

C.  Analysis

Appellant contends that the evidence is factually insufficient to establish that he was the one who committed the offense of burglary of a habitation.  Appellant argues that the evidence clearly establishes that Standifer, not appellant, committed the crime.  Appellant cites Standifer’s testimony that Standifer’s truck was used in the crime, Standifer’s house was not far from Swanson’s house, and that Standifer discarded the items in the truck as support for his contention.  However, Standifer also testified that on May 17 he let appellant borrow his truck and that he discarded the hedge trimmer and lawn mower because he did not want to be caught with them.  Additionally, appellant ignores the fact that Officer Howard positively identified him from a photo lineup.  Appellant relies on the fact that Officer Howard picked Standifer out of the first photo lineup as proof that he did not commit the crime.  However, Officer Howard testified that when she saw Standifer in person she knew that he was not appellant because Standifer did not have a tattoo on the left side of his neck.  Additionally, in the second photo lineup Officer Howard saw, she positively identified appellant as being the driver of the truck on May 17.   

Appellant contends that Standifer’s past criminal history points to the fact that Standifer committed the crime and not appellant.  However, rule 609 of the Texas Rules of Evidence provides that evidence that a witness has committed a crime may be used for impeachment and not as substantive evidence.  
Tex. R. Evid.
 609(a). 

Additionally, appellant points to the fact that Officer Howard did not notice his heavily tattooed arms when she pulled him over.  However, Officer Howard testified that the driver of the truck was wearing a long-sleeved shirt and therefore she was unable to see the tattoos.  Officer Howard stated that the reference to appellant’s wearing a t-shirt was in Officer Klucking’s report, not in her description of appellant.  Unless the record clearly reveals that a different result is appropriate, we defer to the jury’s determination concerning the weight to place upon conflicting testimony, because resolution of facts often turns on an evaluation of the credibility and demeanor of the witnesses.  
Edwards v. State
, 178 S.W.3d 139, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.); 
see also Johnson v. State
, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).  When viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  Thus, we overrule appellant’s first point.

IV.  Judicial Notice

In his second and third points, appellant contends that the trial court abused its discretion by taking judicial notice of information contained in an affidavit appellant gave while he was in police custody in violation of the United States Constitution and article 38.22 of the code of criminal procedure.  
See 
U.S. Const. 
amends.
 V, XIV; Tex. Code Crim. Proc. Ann
. 
art. 38.22 (Vernon 
2005).  
 

A.  Standard of Review

The ability to take judicial notice is within the discretion of the trial court and will not be overturned absent an abuse of that discretion.  
See Rodriguez v. State, 
90 S.W.3d 340, 359 (Tex. App.—El Paso 2001, pet. ref’d).  That is to say, as long as the trial court’s ruling was within the zone of reasonable disagreement, the appellate court should affirm. 
 Moses v. State, 
105 S.W.3d 622, 627 (Tex. Crim. App. 2003); 
see also Montgomery v. State
, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh’g); 
Karnes v. State
, 127 S.W.3d 184, 189 (Tex. App.སྭFort Worth 2003, no pet.).  

B.  Applicable Law

Rule 201 of the Texas Rules of Evidence dictates when a trial judge can take judicial notice of adjudicative facts.  
Tex. R. Evid.
 201.  The Fifth Amendment provides that no person “shall be compelled in any criminal case to be a witness against himself.”  
U.S. Const
. amend. V.  The Fourteenth Amendment states, “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.”  
Id.
 amend. XIV.  Article 38.22 of the code of criminal procedure provides, “No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding.”  
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 2.

C.  Applicable Facts

In his second point, appellant complains that the trial court erred by taking judicial notice that Martin is his wife from a statement he made in an indigency affidavit.

[THE STATE]: Your Honor, at this time the State would request the Court to take judicial notice in a sworn affidavit sworn by [appellant] that he lists Melinda Martin as his wife.  

[DEFENSE COUNSEL]: Your Honor, we’re going to make the same objections we made before that those are compelled statements that would be in violation of the Constitution [Fifth] Amendment and [a]rticle 38.22.  It’s not a warned statement.  It’s while [appellant was] in custody.

THE COURT: And the Court specifically finds that it’s not for [the] purpose of finding out incriminating information.  Your objection is overruled.

And the Court takes judicial notice that in a sworn affidavit, [appellant] listed name of spouse Melinda Martin.  

In appellant’s third point, he contends that the trial court erred by taking judicial notice of appellant’s date of birth.  

[THE STATE]: Your Honor, at this time the State would request the Court to take judicial notice of an affidavit by [appellant] in this cause.  And I’m requesting the Court to take judicial notice that the date of birth given by [appellant] was January 27th of 1959.  

[DEFENSE COUNSEL]: Judge, can I see the document he’s talking about?

THE COURT: Uh-huh.

[THE STATE]: Thank you, Judge.

[DEFENSE COUNSEL]: Your Honor, we’re going to object to the Court taking judicial notice of this document particularly date of birth, the information on it, because it’s in connection with a request for counsel and indigency.

THE COURT: All right.  That’s overruled.  And the Court takes judicial notice that [appellant] has stated in a sworn affidavit in the Court’s file that his date of birth is [January 1, 1959]. 

D.  Analysis

In appellant’s second point, he argues that the trial court abused its discretion by taking judicial notice from his affidavit that Martin was his wife. Custodial interrogation is defined as questioning initiated by law enforcement officers that results in self-incriminating statements without full warnings of constitutional rights.  
See Wilkerson v. State
, 173 S.W.3d 521, 526-27 (Tex. Crim. App. 2005).  However, in his brief, appellant states that “though the information in the affidavit was not given in response to 
questions
 
seeking incriminating 
evidence against him, Appellant submits that because the information was eventually used against [him] for an incriminating purpose during his trial[,] the constitutional safeguards as well as those prescribed in art. 38.22 should have been applicable.”  We have found no case law that has extended the definition of “custodial interrogation” to information obtained that was not in response to investigative questioning and was not incriminating.  The State argues that to expand the definition to include information that is not self-incriminating would render the term “custodial interrogation” meaningless.  We agree and decline to extend the definition.  Accordingly, we hold that the trial court did not abuse its discretion by taking judicial notice that appellant named Martin as his wife.
(footnote: 5)  Therefore, we overrule appellant’s second point.

In his third point, appellant contends that the trial court abused its discretion by taking judicial notice of his date of birth.  However, at trial, appellant did not object to the trial court’s taking judicial notice of his birth date on the basis that it violates the Fifth and Fourteenth Amendments to the United States Constitution and article 38.22 of the code of criminal procedure.  Instead, appellant objected to the evidence only on the basis that it is “in connection with a request for counsel and indigency.”

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). 
Additionally, t
he complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited.  
Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex.  Crim. App. 2004); 
Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).  Accordingly, the complaint appellant raised at trial (i.e., that his date of birth was taken in connection with a request for counsel and indigency) does not comport with his complaint on appeal (i.e., that his rights under the Fifth and Fourteenth Amendments and article 38.22 were violated).  Thus, we overrule appellant’s third point.  

V.  Conclusion

Having overruled appellant’s three points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 8, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
On May 17, 2004, Officer Howard was employed as a lake patrol marshal on Lake Worth.

3:
There were two sheds on Swanson’s property, but only the smaller one had been broken into.  

4:
There was some question as to whether appellant wiped his fingerprints off items in the house with the dish towel.  The State alleged that the reason there were no fingerprints in the house is because appellant wiped them off.

5:
Our holding does not address the propriety of taking judicial notice of a fact from a source such as this; no one challenged it on this basis.  
See 
Tex. R. Evid.
 201.