COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-123-CR

 

TERRY LYNN BRITT                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








Appellant Terry Lynn Britt
appeals his conviction and forty-five year sentence for burglary of a
habitation.  In appellant=s first point, he contends that the evidence is factually insufficient
to establish that he committed the offense. 
In his second and third points, appellant complains that the trial court
abused its discretion by taking judicial notice of information contained in an
affidavit given by appellant while he was in police custody in violation of the
Fifth and Fourteenth Amendments of the United States Constitution and article
38.22 of the code of criminal procedure. We affirm.

II.  Background Facts

On May 17, 2004, Brandi
Howard, a police officer with the Mansfield Police Department, responded to a
call that a residential alarm was going off at Deborah Swanson=s house.[2]  When Officer Howard arrived at the house, she
saw appellant driving off in a blue pickup truck, and she followed him.  Officer Howard pulled appellant over after he
attempted to turn the wrong way down a one-way street.  Officer Howard then asked appellant for his
identification, but appellant said that he did not have any and handed her a
pink slip from a citation.  After calling
in the information on the pink slip, Officer Howard asked appellant to get out
of the truck, but appellant drove off.  

On May 18, 2004, Officer
Howard viewed a photo lineup and identified Jimmy Standifer, whom she thought
was appellant, as being the driver of the truck the previous day.  However, after seeing Standifer in person,
she realized that he was not appellant because he did not have a tattoo on the
left side of his neck.  Officer Howard
then viewed a second photo lineup and positively identified appellant as being
the driver of the truck.  








The jury found appellant
guilty of the offense of burglary of a habitation, answered true to the
habitual offender notice, and assessed his punishment at forty-five years in
the Institutional Division of the Texas Department of Criminal Justice. 

III.  Factual Sufficiency

In appellant=s first point, he argues that the evidence is factually insufficient
to establish that he committed the offense of burglary of a habitation.  

A.  Standard of Review








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
      In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Facts








Paul Klucking, an officer
with the Fort Worth Police Department, testified that on May 17, 2004, he
arrived at Swanson=s house at
approximately 2:35 p.m. to relieve the first officer on the scene.  He said that when he got to the house, he
noticed that the back door that led into the sunroom was open and appeared to
have been kicked in.  He stated that the
back door jamb was laying on the floor. 
Officer Klucking said that the smaller shed on the property had been
broken into as well.[3]  Officer Klucking testified that Swanson was
not at home when he arrived at her house, but that she arrived at the house at
approximately 4:30 p.m.  Swanson then
walked through the house and listed items that were missing. 








J.J. Jeanes, an officer with
the Fort Worth Police Department, testified that when he arrived at the house,
he noticed that it looked like someone had kicked in the back door with force
and had gone through the items in the house. 
He stated that he dusted for fingerprints in the house, but that he did
not find any prints.  Officer Jeanes said
that it was unusual not to find any prints because someone lived in the
house.  However, he stated that there was
a dish towel in the office room and that someone could destroy a fingerprint if
he or she wiped an item down when it had a fingerprint on it.[4]  Officer Jeanes testified that he walked
through the entire house and saw that several rooms were in disarray, including
items being turned over.  Additionally,
Officer Jeanes said that the smaller shed in the backyard was open and that it
looked like someone had pried the lock off the door.

Swanson testified that on May
17, 2004, she had been at the hospital most of the day with her mother.  She stated that when she got back to her
mother=s assisted living center, the director of the center told her that the
police were looking for her because someone had broken into her house.  Swanson stated that when she arrived at the
house, she noticed that the door frame to the back door was damaged.  Swanson testified that she was able to
identify the items that were missing, including briefcases, a jewelry box, and
jewelry. She said that some furniture had been overturned and that all of the
closet doors were open and that it appeared that someone had gone through them.
She estimated that the total value of the missing items was $4,300.  Swanson stated that she did not give anyone
permission to be in her house.








Officer Howard testified that
she responded to a call that a residential alarm was going off at Swanson=s house.  As she was driving
down the street that Swanson=s house was on, Officer Howard saw a blue pickup truck pulling out of
Swanson=s driveway, and she began to follow the truck.  Officer Howard testified that she saw lawn
mower handles sticking out of the back of the truck bed.  Officer Howard stated that she pulled
appellant over after he attempted to make a left turn on a one-way street when
traffic was going in the opposite direction. 

After pulling appellant over,
Officer Howard got out of her patrol car and asked appellant for his
identification.  Appellant did not have
any identification on him, but he instead gave Officer Howard a pink copy of a
citation.  Officer Howard testified that
appellant seemed nervous and that his hands were shaking.  She stated that appellant was an older white
male, he appeared to be in his forties, he did not seem Avery clean,@ he had gray
hair and was missing some teeth, he was wearing a gray and white cowboy shirt,
and he had a green tattoo on the left side of his neck.








After calling in the
information on the pink slip, Officer Howard walked back to appellant=s truck and noticed several items in the bed of the truck. Officer
Howard then opened the driver=s door and asked appellant to step out of the truck.  Appellant said Ano@ and then
drove off in the wrong direction. Officer Howard stated that she tried to grab
appellant, but that she could not pull him out of the truck because he had his
seat belt on.  She said that as she was
trying to grab appellant, the back tire of the truck ran over her foot.  Officer Howard testified that appellant was stopped
for approximately five to ten minutes, but that she saw his face for approximately
one minute.  Officer Howard testified
that she did not chase appellant after he drove off because the Fort Worth
Marshal=s office had a no-pursuit policy.

The following day, Officer
Howard viewed a photo lineup and picked 
Standifer, whom she believed to be appellant, out of the lineup.
However, after Standifer was brought into the police station, she realized that
he was not appellant because Standifer did not have the tattoo on the left side
of his neck.  Officer Howard testified
that she thought that appellant was in one of the pictures of the lineup and
that was why she chose Standifer. 
However, after she saw appellant, she knew that he was the individual
driving the truck on May 17.








Standifer testified that on
May 17, 2004, he lent his GMC pickup truck to appellant because appellant told
him that he needed a truck to exchange some tools.  Standifer stated that he knew appellant
through appellant=s girlfriend,
Melinda Martin.  He said that
approximately three hours after appellant borrowed the truck, appellant called
him and told him that the truck had run out of gas.  Standifer then drove to the location where
appellant said the truck had run out of gas and noticed that the key was in the
ignition, but appellant was not there. 
He stated that he saw a lawn mower, ladder, and hedge trimmer in the bed
of the truck.  After starting the truck,
Standifer testified that he dumped the lawn mower and hedge trimmer on the side
of the road and kept the ladder in the truck because he thought the ladder
belonged to appellant.

Standifer then learned that
the police were looking for him, and he went to the police station and gave a
statement of what had occurred on May 17. Standifer drove the police to the
area where he dumped the lawn mower and hedge trimmer, but the items were no
longer there.  He stated that there was
not anything in the truck when he lent it to appellant to use.  Additionally, Standifer stated that Swanson=s house was not too far from his house. Standifer testified that he
had two prior burglary of a habitation convictions in 1983 and 1985 and that he
did not have a tattoo on the left side of his neck. 

C.  Analysis








Appellant contends that the
evidence is factually insufficient to establish that he was the one who
committed the offense of burglary of a habitation.  Appellant argues that the evidence clearly
establishes that Standifer, not appellant, committed the crime.  Appellant cites Standifer=s testimony that Standifer=s truck was used in the crime, Standifer=s house was not far from Swanson=s house, and that Standifer discarded the items in the truck as
support for his contention.  However,
Standifer also testified that on May 17 he let appellant borrow his truck and
that he discarded the hedge trimmer and lawn mower because he did not want to
be caught with them.  Additionally,
appellant ignores the fact that Officer Howard positively identified him from a
photo lineup.  Appellant relies on the
fact that Officer Howard picked Standifer out of the first photo lineup as
proof that he did not commit the crime. 
However, Officer Howard testified that when she saw Standifer in person
she knew that he was not appellant because Standifer did not have a tattoo on
the left side of his neck.  Additionally,
in the second photo lineup Officer Howard saw, she positively identified
appellant as being the driver of the truck on May 17.  

Appellant contends that
Standifer=s past
criminal history points to the fact that Standifer committed the crime and not
appellant.  However, rule 609 of the
Texas Rules of Evidence provides that evidence that a witness has committed a
crime may be used for impeachment and not as substantive evidence.  Tex.
R. Evid. 609(a). 








Additionally, appellant
points to the fact that Officer Howard did not notice his heavily tattooed arms
when she pulled him over.  However,
Officer Howard testified that the driver of the truck was wearing a long-sleeved
shirt and therefore she was unable to see the tattoos.  Officer Howard stated that the reference to
appellant=s wearing a
t-shirt was in Officer Klucking=s report, not in her description of appellant.  Unless the record clearly reveals that a
different result is appropriate, we defer to the jury=s determination concerning the weight to place upon conflicting
testimony, because resolution of facts often turns on an evaluation of the
credibility and demeanor of the witnesses. 
Edwards v. State, 178 S.W.3d 139, 143 (Tex. App.CHouston [1st Dist.] 2005, no pet.); see also Johnson v. State,
23 S.W.3d 1, 8 (Tex. Crim. App. 2000). 
When viewed neutrally, the evidence is not so obviously weak or so
greatly outweighed by contrary proof that it would not support the finding of
guilty beyond a reasonable doubt.  Thus,
we overrule appellant=s first point.

IV.  Judicial Notice

In his second and third
points, appellant contends that the trial court abused its discretion by taking
judicial notice of information contained in an affidavit appellant gave while
he was in police custody in violation of the United States Constitution and
article 38.22 of the code of criminal procedure.  See U.S.
Const. amends. V, XIV; Tex. Code
Crim. Proc. Ann. art. 38.22 (Vernon 2005).   

A.  Standard of Review








The ability to take judicial
notice is within the discretion of the trial court and will not be overturned
absent an abuse of that discretion.  See
Rodriguez v. State, 90 S.W.3d 340, 359 (Tex. App.CEl Paso 2001, pet. ref=d).  That is to say, as long as
the trial court=s ruling was
within the zone of reasonable disagreement, the appellate court should affirm.  Moses v. State, 105 S.W.3d 622, 627 (Tex.
Crim. App. 2003); see also Montgomery v. State, 810 S.W.2d 372, 387-88
(Tex. Crim. App. 1991) (op. on reh=g); Karnes v. State, 127 S.W.3d 184, 189 (Tex. App._Fort
Worth 2003, no pet.).  

B.  Applicable Law

Rule 201 of the Texas Rules
of Evidence dictates when a trial judge can take judicial notice of
adjudicative facts.  Tex. R. Evid. 201.  The Fifth Amendment provides that no person Ashall be compelled in any criminal case to be a witness against
himself.@  U.S. Const. amend. V. 
The Fourteenth Amendment states, ANo State shall make or enforce any law which shall abridge the
privileges or immunities of citizens of the United States.@  Id. amend. XIV.  Article 38.22 of the code of criminal
procedure provides, ANo written
statement made by an accused as a result of custodial interrogation is admissible
as evidence against him in any criminal proceeding.@  Tex. Code Crim. Proc. Ann. art. 38.22, ' 2.

C.  Applicable Facts

In his second point,
appellant complains that the trial court erred by taking judicial notice that
Martin is his wife from a statement he made in an indigency affidavit.








[THE STATE]: Your Honor, at this time the State
would request the Court to take judicial notice in a sworn affidavit sworn by
[appellant] that he lists Melinda Martin as his wife.  

 

[DEFENSE COUNSEL]: Your Honor, we=re
going to make the same objections we made before that those are compelled
statements that would be in violation of the Constitution [Fifth] Amendment and
[a]rticle 38.22.  It=s not
a warned statement.  It=s
while [appellant was] in custody.

 

THE COURT: And the Court specifically finds that
it=s not
for [the] purpose of finding out incriminating information.  Your objection is overruled.

 

And the Court takes judicial notice that in a
sworn affidavit, [appellant] listed name of spouse Melinda Martin.  

 

In appellant=s
third point, he contends that the trial court erred by taking judicial notice
of appellant=s
date of birth.  

 

[THE STATE]: Your Honor, at this time the State
would request the Court to take judicial notice of an affidavit by [appellant]
in this cause.  And I=m
requesting the Court to take judicial notice that the date of birth given by
[appellant] was January 27th of 1959.  

 

[DEFENSE COUNSEL]: Judge, can I see the document
he=s
talking about?

 

THE COURT: Uh-huh.

 

[THE STATE]: Thank you, Judge.

 








[DEFENSE COUNSEL]: Your Honor, we=re
going to object to the Court taking judicial notice of this document
particularly date of birth, the information on it, because it=s in
connection with a request for counsel and indigency.

 

THE COURT: All right.  That=s overruled.  And the Court takes judicial notice that
[appellant] has stated in a sworn affidavit in the Court=s
file that his date of birth is [January 1, 1959]. 

 

D.  Analysis

 








In appellant=s second point, he argues that the trial court abused its discretion
by taking judicial notice from his affidavit that Martin was his wife.
Custodial interrogation is defined as questioning initiated by law enforcement
officers that results in self-incriminating statements without full warnings of
constitutional rights.  See Wilkerson
v. State, 173 S.W.3d 521, 526-27 (Tex. Crim. App. 2005).  However, in his brief, appellant states that Athough the information in the affidavit was not given in response to questions
seeking incriminating evidence against him, Appellant submits that
because the information was eventually used against [him] for an incriminating
purpose during his trial[,] the constitutional safeguards as well as those
prescribed in art. 38.22 should have been applicable.@  We have found no case law that
has extended the definition of Acustodial interrogation@ to information obtained that was not in response to investigative
questioning and was not incriminating. 
The State argues that to expand the definition to include information
that is not self-incriminating would render the term Acustodial interrogation@ meaningless.  We agree and
decline to extend the definition. 
Accordingly, we hold that the trial court did not abuse its discretion
by taking judicial notice that appellant named Martin as his wife.[5]  Therefore, we overrule appellant=s second point.

In his third point, appellant
contends that the trial court abused its discretion by taking judicial notice
of his date of birth.  However, at trial,
appellant did not object to the trial court=s taking judicial notice of his birth date on the basis that it
violates the Fifth and Fourteenth Amendments to the United States Constitution
and article 38.22 of the code of criminal procedure.  Instead, appellant objected to the evidence
only on the basis that it is Ain connection with a request for counsel and indigency.@








To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004). Additionally, the complaint made
on appeal must comport with the complaint made in the trial court or the error
is forfeited.  Heidelberg v. State,
144 S.W.3d 535, 537 (Tex.  Crim. App.
2004); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert.
denied, 522 U.S. 827 (1997); Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990).  Accordingly, the
complaint appellant raised at trial (i.e., that his date of birth was taken in
connection with a request for counsel and indigency) does not comport with his
complaint on appeal (i.e., that his rights under the Fifth and Fourteenth
Amendments and article 38.22 were violated). 
Thus, we overrule appellant=s third
point.  

V.  Conclusion

Having overruled appellant=s three points, we affirm the trial court=s judgment.

PER CURIAM

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
June 8, 2006











[1]See Tex. R. App. P. 47.4.





[2]On
May 17, 2004, Officer Howard was employed as a lake patrol marshal on Lake
Worth.





[3]There
were two sheds on Swanson=s
property, but only the smaller one had been broken into.  





[4]There
was some question as to whether appellant wiped his fingerprints off items in
the house with the dish towel.  The State
alleged that the reason there were no fingerprints in the house is because
appellant wiped them off.





[5]Our
holding does not address the propriety of taking judicial notice of a fact from
a source such as this; no one challenged it on this basis.  See Tex.
R. Evid. 201.