

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00092-CR

---

CHRISTOPHER MARK TAYLOR                                                 APPELLANT

V.

THE STATE OF TEXAS                                                           STATE

----------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three points, appellant Christopher Mark Taylor appeals his conviction

for online harassment.[2]  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Act of June 1, 2009, 81st Leg., R.S., ch. 911, § 1, 2009 Tex. Gen. Laws 2441, 2441–42 (amended 2011) (current version at Tex. Penal Code Ann. § 33.07 (West Supp. 2011)).  Because the relevant portion of the former "Online Harassment" section of the penal code is the same as the current "Online Impersonation" statute, we will cite to the current statute throughout this opinion. *See* Tex. Penal Code Ann. § 33.07(b).

## Background Facts

Scheri Couch manages a website by which she provides psychic services under the name "Sataya."[3] Through the website, Couch's customers may chat with her and may obtain psychic readings. In 2009, Couch began to receive messages through the chat function from someone who was "very abrupt, very rude, [and] sometimes obscene." On approximately September 23, 2009, Couch received a package in the mail with "stylized writing" and a "love stamp for the postage stamp." The package included what appeared to be a used condom (the condom actually contained soy milk). Then, on September 27, Couch received a message that stated in part,

> Here is the deal Shitaya! [Y]ou are going to stop putting . . . curses on me and my family. You are a fake dumbslut; your reviews all show that you are NOT real! [Y]ou are not a descendent and [I] am frankly really tired of all this . . . that you are causing. You are a witch . . . .

On October 6, Couch received a chat message that purported to be from her hairdresser, Renee Adam.[4] The person pretending to be Adam invited Couch to lunch at a restaurant. Couch, believing that Adam had actually sent the message, went to the restaurant, but Adam was not there. When Couch called

---

[3]Couch, who has taken some collegiate psychology classes and charges $3 per minute for her services, claims to be a direct descendant of Jesus and Mary Magdalene.

[4]Adam confirmed at trial that she did not send the message. She said that she was shocked and surprised to learn that someone had used her name to mislead Couch.

Adam, Adam said that she did not know anything about the lunch meeting. Couch realized that the chat message she had received had not been sent by Adam, and Couch became very frightened. She felt uneasy going to the grocery store or "anywhere to do anything," and she became "fearful of the chat function on [her] website." Later in October, when Couch received another chat message that purported to be from Adam, Couch responded, "You are not, nor have you ever been [Adam]." Couch told the person who was masquerading as Adam that she knew he had used a myriad of names while chatting on the website. The person responded, "[S]peaking of used[,] [I] hope you enjoyed your care package." Later, Couch received a package containing panties that appeared to be soiled; the package also contained a note that accused Couch of being a "fake psychic."[5]

The Lewisville Police Department (LPD) investigated Couch's claim of harassment. LPD Detective William Wawro discovered that the chat messages that Couch had received had been sent from a computer at the University of North Texas. Employees of the university gave information to Detective Wawro that caused him to suspect that the messages had been sent by appellant. During appellant's meeting with Detective Wawro, he confessed that he had sent the messages to Couch and had mailed the condom and panties to her. Appellant explained that he used Adam's name because he had seen it on

---

[5]The panties, which had been cut, actually had Nutella on them.

3

Couch's Facebook webpage. He claimed that he had pretended to be Adam because he needed a psychic, and he wanted to determine the validity of Couch's claim to have psychic abilities. Detective Wawro arrested appellant. Appellant eventually sent Couch a letter to apologize for his actions.

The State charged appellant with online harassment. Appellant retained counsel and pled not guilty. At trial, he testified that he had looked for a psychic through an internet search and had found Couch. He had determined to test Couch's psychic ability by arranging a lunch date under the guise that he was Adam. According to appellant, Couch gave him her home address when he conveyed to her that he needed psychic help and wanted to have a meeting. Appellant testified that he sent the used condom to symbolize his belief that while giving love advice, Couch took people's money "and then just [threw] them away." He said that he sent the panties for symbolic purposes as well but that he did not intend to upset Couch. Appellant said that when he learned that he had upset Couch, he wanted to apologize to her immediately.

After the parties presented closing arguments and the jury deliberated for less than twenty minutes, the jury convicted appellant. Appellant testified again in the punishment phase of his trial. The trial court assessed appellant's punishment at 365 days' confinement, but the court suspended the imposition of the sentence and placed him on community supervision. Appellant brought this appeal.

4

**Admission of Extraneous Evidence**

In his first point, appellant argues that the trial court abused its discretion by admitting evidence that he had sent the condom and panties to Couch, which appellant asserts were extraneous acts.[6]  Before trial, appellant filed a motion in limine, seeking to exclude evidence of "any and all other alleged crimes, wrongs, or acts" that he had committed.  Outside of the presence of the jury, the trial court held a hearing on appellant's motion.  Appellant urged the trial court to exclude evidence concerning the condom and panties that he had sent to Couch in September 2009 and November 2009, respectively.  The trial court decided to admit evidence about the condom but withheld its ruling on evidence of the panties.  During appellant's opening statement, his counsel conceded that appellant sent a message to Couch but argued that appellant

> wasn't intending to harm her. . . .  He was testing her psychic abilities.
>
> . . . [W]hile it may not have been the best course of action, he had no intent to harm her.  The facts are the facts, but what we don't have here is an intent to harm somebody, okay?

---

[6]We will presume, without deciding, that appellant's sending the condom and panties does not qualify as admissible contextual evidence.  *See Moore v. State*, 165 S.W.3d 118, 122–25 (Tex. App.—Fort Worth 2005, no pet.).  We will also broadly construe appellant's first point as contesting the admissibility of the challenged evidence under both rules of evidence 403 and 404(b).  *See* Tex. R. Evid. 403, 404(b).

During the trial, appellant objected again, under rules of evidence 403 and 404(b), to the admission of evidence concerning the condom and panties, but the trial court overruled his objections.

We review the trial court's admission of evidence under an abuse of discretion standard. *Price v. State*, 351 S.W.3d 148, 150 (Tex. App.—Fort Worth 2011, pet. ref'd); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Under this standard, the trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement." *Karnes v. State*, 127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, pet. ref'd), *cert. denied*, 129 S. Ct. 2391 (2009). If the trial court's ruling on the admission of evidence is correct under any theory of law, even if the trial court gives the wrong reason for its ruling, we must affirm the court's decision to admit the evidence. *Felan v. State*, 44 S.W.3d 249, 254 (Tex. App.—Fort Worth 2001, pet. ref'd).

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Tex. R. Evid. 404(b); *see Montgomery*, 810 S.W.2d at 387–88; *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that the defendant is generally to be tried only for the offense charged, not for any other crimes), *cert. denied*, 130 S. Ct. 53 (2009). The State, as the proponent of extraneous offense evidence, bears the burden of showing

6

admissibility. *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

To obtain a conviction, the State was required to prove that when appellant sent the chat message to Couch while inviting her to lunch and while claiming to be Adam, he did so without Adam's consent, with the intent to cause Couch to reasonably believe that Adam sent the message, and with the intent to harm or defraud any person. *See* Tex. Penal Code Ann. § 33.07(b). The penal code defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury." *Id.* § 1.07(a)(25) (West Supp. 2011). "There is no requirement the harm be physical harm." *Hudspeth v. State*, 31 S.W.3d 409, 411 (Tex. App.—Amarillo 2000, pet. ref'd); *see also Halay v. State*, No. 03-07-00327-CR, 2008 WL 5424095, at *7 (Tex. App.—Austin Dec. 31, 2008, no pet.) (mem. op., not designated for publication) ("[E]ven emotional harm and aggravation . . . can reasonably be considered loss, disadvantage, or injury."); *White v. State*, No. 14-05-00454-CR, 2006 WL 2771855, at *2 (Tex. App.—Houston [14th Dist.] Sept. 28, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that emotional distress was sufficient to qualify as harm under section 1.07(a)(25)).

At trial, through his opening statement[7] and through his testimony, appellant disputed that when he sent the message in which he masqueraded as Adam, he had the intent to harm Couch. He claimed that he sent the message only to test Couch's psychic abilities. It is at least subject to reasonable disagreement whether evidence of appellant's sending disturbing, sexually-themed items (a seemingly used condom and cut and seemingly soiled panties) before and after he pretended to be Adam was admissible to show his intent to harm Couch (at least emotionally) and to rebut his defensive theory that he wanted only to test her psychic abilities when he pretended to be Adam. *See* Tex. R. Evid. 404(b) (stating that extraneous evidence may be admissible to show intent); *Moses*, 105 S.W.3d at 626 ("Rebuttal of a defensive theory . . . is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)."); *Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985) (explaining that when a defendant's intent may not be inferred from the criminal act itself, extraneous evidence that is relevant to intent is generally admissible). This is especially true with regard to the panties, which appellant sent in November 2009, after he knew that Couch had discovered that he was not Adam and when he had already expressed his determination that Couch was a "fake" psychic. We hold that the trial court's decision to admit evidence

---

[7]"[A] defense opening statement . . . opens the door to the admission of extraneous-offense evidence . . . to rebut the defensive theory presented in the defense opening statement." *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

concerning the condom and panties, which appellant sent before and after he committed the offense, may be justified on the basis that the evidence implies his intent while committing the offense. *See* Tex. R. Evid. 404(b); *Tate v. State*, 981 S.W.2d 189, 190, 193 (Tex. Crim. App. 1998) (holding that evidence of a threat made by a decedent a month or two before his death was admissible under rule 404(b), when offered by the defendant who was charged with murder and asserted self-defense, because the threat was probative of the decedent's state of mind to possibly harm the defendant on the date of the offense); *Amis v. State*, 87 S.W.3d 582, 587 (Tex. App.—San Antonio 2002, pet. ref'd) (holding similarly).

We must also determine whether the evidence was admissible under rule 403. *See* Tex. R. Evid. 403 (stating that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice"). If a trial court determines that evidence of an extraneous act has relevance aside from character conformity, and a timely, proper rule 403 objection is made, the trial court must make a balancing determination under rule 403. *Karnes*, 127 S.W.3d at 191. As we explained in *Karnes*,

> Only "unfair" prejudice provides the basis for exclusion of relevant evidence. Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. Rule 403 favors admissibility and a presumption exists that relevant evidence will be more probative than prejudicial. In evaluating the trial court's determination under rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence.

9

The trial court's balancing determination must be measured against the relevant criteria by which a rule 403 decision is made. The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it.

*Id.* at 191–92 (citations omitted).

Appellant asserts that there is a "high probability that [his] acts inflamed the jury." We agree that evidence of the nature of a used condom and cut and soiled panties might carry the danger of the jury being prejudiced, but not unfairly so.[8] Therefore, we cannot conclude that the trial court abused its discretion by siding with the presumption of admissibility under the facts of this case.

As we have already explained, a trial court could reasonably conclude that the challenged evidence served to make appellant's intent to harm Couch, which

---

[8]We note that the potential for evidence about such items to "inflame" the jury, as appellant argues, demonstrates the probative quality of evidence to show appellant's intent to harm Couch when he sent the items to her and when he impersonated Adam.

was an element of his crime under section 33.07(b) of the penal code and which was the principal disputed issue in the case, more probable. Moreover, a trial court could have rationally found that the challenged evidence related to appellant's intent to harm Couch and rebutted appellant's defensive theory more poignantly than other evidence at the State's disposal, including logs of some of the chat messages that he had sent to her. The State did not need significant time to develop the evidence concerning the condom or panties. Couch specifically referred to the condom only four times in her testimony that comprises over thirty pages of the reporter's record, and she did not refer to the panties at all. Similarly, the majority of Detective Wawro's and appellant's testimony in front of the jury was focused on matters unrelated to the condom or panties.

Because we conclude that the trial court did not abuse its discretion by determining that the evidence of the condom and panties was not substantially more prejudicial than probative, we hold that the trial court did not abuse its discretion by refusing to exclude the evidence under rule 403. *See* Tex. R. Evid. 403; *Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006) ("[W]hen determining whether evidence is admissible under Rule 403, we do not consider just whether the evidence is more prejudicial than probative, we consider whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice."), *cert. denied*, 549 U.S. 1224 (2007).

11

Because the admissibility of evidence concerning the condom and panties under rules 403 and 404(b) is within the zone of reasonable disagreement, we hold that the trial court did not abuse its discretion by admitting the evidence, and we overrule appellant's first point. *See* Tex. R. Evid. 403, 404(b); *Karnes*, 127 S.W.3d at 189, 191–92.

**The Admissibility of Information from Couch's Website**

In his second point, appellant argues that the trial court erred by ruling that information from Couch's website was inadmissible. During Couch's initial testimony, appellant's counsel, through cross-examination, asked her several questions about her qualifications as a psychic and about the content of her website. In particular, the following exchange occurred:

> [DEFENSE COUNSEL:] Did you undergo any testing to become a psychic?
>
> A. No, I [did] not.
>
> Q. You didn't take a series of tests that measure, like, how clairvoyant you are or your --
>
> A. I have taken --
>
> Q. Let me finish my question, please. Your extrasensory perceptions? You've undergone testing, correct?
>
> A. I have undergone testing that was reviewed by my own --
>
> [DEFENSE COUNSEL]: Objection. Nonresponsive.
>
> THE COURT: Sustained.
>
> Q. [DEFENSE COUNSEL:] And you advertise the fact that you've undergone testing, correct?

A. I don't believe I do.

. . . .

Q. Okay. All right. So when you underwent testing for determining which psychic qualities you are stronger in, whether it's clairvoyance or telling the future or reading palms, whatever, were there tests?

. . . .

A. I have not been tested by an authoritative body as to my psychic abilities.

Near the end of Couch's initial testimony, appellant's counsel told the trial court, "I have some printouts that are probably sitting on my desk that directly contradict what she has been testifying to. It's in my file." The trial court told counsel that he could retrieve the printouts during a recess.

Counsel apparently did so, and he eventually sought to recall Couch to impeach her testimony. During counsel's voir dire examination of Couch outside of the jury's presence, he gave her a printout from her website, which showed that Couch had claimed to have tested in the top six percent in "ESP perception or sensories." When counsel asked Couch whether the printout conflicted with her previous testimony about whether she had been tested, she said, "To my way of thinking, what I thought you were asking me, as far as any academic testing such as at a major university, that did not happen." Although counsel argued that the printouts should be admitted because they affected Couch's

13

credibility and would be "evidence of impeachment,"[9] the trial court excluded the printouts on the basis that they did not qualify as prior inconsistent statements.

Assuming, without deciding, that the trial court abused its discretion by excluding evidence of the printouts, which appeared to conflict with Couch's prior testimony that she had not been tested to become a psychic and had not advertised that she had been tested, we must review that error for harm. Because the error concerns the exclusion of evidence, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights.[10] Tex. R. App. P. 44.2(b); *see Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *James v. State*, 102 S.W.3d 162, 179 (Tex. App.—Fort Worth 2003, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.

---

[9]Likewise, on appeal, appellant argues that the printouts should have been admitted because they affected Couch's credibility.

[10]Although appellant claims on appeal that the trial court's exclusion of the evidence violated his Sixth Amendment right of cross-examination and also violated his state constitutional rights, he did not make these arguments in the trial court, and he therefore forfeited them. *See* Tex. R. App. P. 33.1(a)(1); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Whitfield v. State*, 137 S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.) (mem. op.).

14

Crim. App. 2001). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the State's theory and any defensive theories. *Id.*

To obtain a conviction under section 33.07, the State was required to prove that (1) appellant engaged in certain acts, and (2) he did so with a specific intent. *See* Tex. Penal Code Ann. § 33.07(b). At most, admission of the printouts would have shown that Couch's testimony on her qualifications and testing was inconsistent with some of her representations on her website. The printouts' admission therefore could have affected the jury's view of Couch's credibility. But appellant admitted before trial and at trial that he engaged in the acts required by the statute. Specifically, he conceded that he participated in chats with Couch on her website, and during one of those chats, he masqueraded as Adam, without Adam's consent, while inviting Couch to a lunch date. Because of appellant's admissions, weakening Couch's credibility on a collateral matter such as this would not likely have changed the jury's resolution of these elemental facts against appellant. *See id.* § 33.07(b)(1) (requiring, as elements of the offense, that a person sent an electronic communication that references a name of a person without obtaining the person's consent). As we

15

explained above, appellant's defense was not based on attacking the factual components of Couch's testimony that concerned appellant's actions; rather, the defense challenged his intent in sending the message in which he pretended to be Adam.[11] *See id.* § 33.07(b)(2)–(3) (explaining that a violation of the statute requires the sender of the message to have the intent to deceive the recipient of the message and to harm or defraud someone). We cannot conceive how weakening Couch's credibility about the contents of her website would have affected the jury's implicit rejection of appellant's defensive theories relating to his intent in sending the message.

For these reasons, we hold that even if the trial court abused its discretion by excluding evidence of the printouts from Couch's website, this potential error did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Walters*, 247 S.W.3d at 219. We overrule appellant's second point.

### The Lack of a Limiting Instruction

In his third point, appellant contends that the trial court erred by failing to include a limiting instruction in the jury charge concerning the proper use of the extraneous acts discussed above. *See* Tex. R. Evid. 105(a). During the pretrial hearing on appellant's motion in limine, after the trial court ruled that evidence of

---

[11]In his closing argument, appellant's counsel conceded that appellant had made "bad choices," but counsel argued, like he had in his opening statement, that appellant's intent was to only test Couch, not to deceive or harm her.

appellant's sending the condom to Couch would be admissible, the following

colloquy occurred between appellant's counsel and the trial court:

> [DEFENSE COUNSEL]: Judge, *during the trial I would still request a limiting instruction of some sort*.

> THE COURT: Oh. The -- okay. You've got the limiting instruction you want me to give?

> [DEFENSE COUNSEL]: Actually, I do on my computer. I assume *we'll probably have it* --

> THE COURT: Yeah, we'll probably have it. [Emphasis added.][12]

During the trial, however, when the jury heard the evidence about the condom

and panties, appellant did not request a limiting instruction. After each side

rested and closed, as the parties were discussing the jury charge, appellant

requested a limiting instruction concerning the extraneous offenses, but the trial

court overruled the request.

Appellant's request came too late. The court of criminal appeals has

explained that "a limiting instruction concerning the use of extraneous offense

evidence should be requested, and given, in the guilt-stage jury charge only if the

defendant requested a limiting instruction at the time the evidence was first

admitted." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *see*

*Hammock v. State*, 46 S.W.3d 889, 893–94 (Tex. Crim. App. 2001). We have

applied this principle to hold that a defendant forfeits his request for a jury-charge

---

[12]We reject appellant's characterization of this exchange as a request for a limiting instruction that the trial court denied.

17

instruction by not requesting the instruction upon the admission of the evidence. *See Gunter v. State*, 327 S.W.3d 797, 802 (Tex. App.—Fort Worth 2010, no pet.); *Smith v. State*, 316 S.W.3d 688, 700 (Tex. App.—Fort Worth 2010, pet. ref'd). Thus, in accordance with precedent from the court of criminal appeals and our own court, we hold that appellant forfeited his complaint about the lack of a limiting instruction in the jury charge by not timely requesting such an instruction when evidence of extraneous acts was presented to the jury. We overrule appellant's third point.

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 22, 2012